# EXHIBIT "A"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01329-FWS-JDE   Document 1-1   Filed 05/27/26   Page 2 of 7   Page ID #:8



## -EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # _____

| **DEBTOR INFORMATION** | | |
|---|---|---|
| **Debtor Name: ("Debtor", "you", or "your")**<br>WIRELESS PARTNERS, LLC | **Debtor Address:**<br>5 Milk St Ste 420<br>Portland, ME 04101 | **Collateral Location:** (If different from Debtor Address)<br>5 Milk St Ste 420 |
| **Debtor Phone #:** | **Federal Tax ID #:** ███████ | |

**PAYMENT AND TERMS**

| **Full Description of Collateral (Include Make Model, Serial Numbers)**<br>See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | **Collateral Cost:**<br>$113,456.00 | **Initial Payment**<br>(**Debtor requests that this amount be electronically debited**) |
|---|---|---|
| | **Initial Payment Date:**<br>04/26/2025 | FIRST PAYMENT: $2,625.00<br>LAST PAYMENT: $2,625.00<br>Fee $:  **$495.00** |
| **Term:**  60<br>(Plus any Prefund or Per diem Period)<br><br>**Monthly Payment Schedule:** 60@$2607.42 | | **Total Amount Due:** |

**By signing below Debtor hereby irrevocably accepts the Collateral under this Agreement and irrevocably authorizes Creditor to pay the supplier on behalf of the Debtor. The person executing this Agreement is authorized to do so, making this Agreement the valid and binding act of the Debtor. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.**

| **Debtor:** WIRELESS PARTNERS, LLC | **Creditor: Ameris Bank** |
|---|---|
| **By:** *Robert J Parsloe*<br>eSigned By — Mar 24, 2025 12 24 45 PM PDT | **By:** *Lisa Morgan*<br>eSigned By — Mar 28, 2025 3 10 19 PM PDT |
| **Name and Title:** Robert J Parsloe    CEO & President | **Title: Vice President** |
| **Date:** 03/24/2025 | **Date:** 03/28/2025 |

**GUARANTY:** You (jointly and severally if more than one) unconditionally guarantee to us and our assigns the payment and performance when due of all of the obligations of the Debtor under the Agreement and all related documents executed by the Debtor. You acknowledge that you have read and understood the Agreement and this Guaranty. You agree that you have an interest in the Debtor, economic or otherwise, and that we would not enter into this Agreement without this Guaranty. We may proceed against you before proceeding against the Debtor, the Collateral or enforce any other remedy. Notwithstanding any changes made to the Agreement in our dealings with Debtor, this Guaranty will remain in effect as changed even if you are not notified of the changes and will remain in effect even if the Agreements are no longer enforceable against the Debtor. You waive all notices to which you may have a right. You agree to pay us all our expenses in enforcing this Guaranty. You may not assign this Guaranty without our written consent. The governing law, jurisdiction and venue provisions of the Agreement shall apply to any action to enforce this Guaranty. You consent to our conducting a credit evaluation of you from all sources, periodically reporting and updating it and sharing the results with others. You agree that we may obtain any information from credit reporting agencies we deem necessary to enforce this Guaranty.

| **Guarantor's Signature:** | **Name:** | **Date:** |
|---|---|---|
| **Guarantor's Signature:** | **Name:** | **Date:** |

**AUTHORIZATION FOR ACH PAYMENTS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or the account from which the Debtor paid any deposit or fee in conjunction with the execution of this Agreement, or any account from which Debtor paid any obligation under this Agreement, or the account from which a cancelled or voided check provided by the Debtor can be drawn, for the payment of all amounts owed by Debtor from time to time under this Agreement. Debtor initiates each transaction and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in the Fees and Taxes section, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable. Any incorrect charge will be corrected upon notification to Creditor, by either a credit or debit to Debtor's account.

**Bank Name:** ███████████   **Bank City, State:** █████████

**ABA Routing No:** ███████   **Account No.:** ███████

**Business Name on Account:** ███████████

**Street Address on Account:** ███████████   **City, State on Account:** █████████

**Authorized Signature:** ███████  eSigned By — Mar 24, 2025 12 15 PM PDT   **Name and Title:** ███████████

EFASP1296J

The original document is owned by Balboa Capital Corporation and this copy was created on Mar 28, 2025 02:10:33 PM.



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

## TERMS OF EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement.  Ameris Bank** ("Creditor", "we", "us", or "our") agrees to lend to Debtor and you agree to borrow from us an amount for the financing of the Collateral.

**Commencement Date.**  Upon verification of the delivery of the Collateral in a form acceptable to us ("Commencement Date"), you hereby authorize us to disburse the Collateral Cost as indicated on the supplier's invoice.

**Payments; Per Diem Expense Reimbursement.** Amounts received by us under this Agreement will be applied at our discretion to any amount outstanding. Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .033333% of the Monthly Payment calculated from the number of days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor.  Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.** All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments may be applied to the Obligations at Creditor's discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

If this Agreement specifies that a Security Deposit is required, then to secure Debtor's timely and full performance of its Obligations under this Agreement, Debtor will deposit the amount so specified with Creditor.  The Security Deposit will be non-interest bearing and may be commingled with other Creditor funds. Within fifteen (15) days after written notice to Debtor that all or any part of the Security Deposit has been used to satisfy any of the Obligations, Debtor will deposit with Creditor an amount sufficient to restore the Security Deposit to the required amount. Upon expiration or termination of this Agreement, if no default by Debtor under this Agreement exists, Creditor will return to Debtor any unused portion of the Security Deposit without interest.

**Grant of Security Interest.** You hereby grant to us a security interest in the Collateral and all proceeds to secure all of your obligations under this Agreement.

**Disclaimer of Warranties and Claims; No Agency.** We make no representation or warranty, express or implied, regarding any matter whatsoever including the merchantability or fitness for a particular purpose of the Collateral. This Agreement is irrevocable. ***Your obligation to pay all amounts payable hereunder is non-cancellable, absolute, and unconditional*** and will not be subject to any reduction, setoff, defense, counterclaim, deferment or recoupment for any reason, **even if the Collateral is damaged, destroyed or defective**. You acknowledge you selected the Collateral and the supplier and your supplier is not our agent nor are we their agent. You understand and agree that we are independent and separate from supplier. You acknowledge that no one, including the supplier, has been authorized to waive or change any term or condition of this Agreement. No representation by the supplier as to any matter shall bind us or affect your duty to pay all amounts and perform all obligations hereunder.  You will use the Collateral for commercial purposes only, in compliance with the law and not for any personal, family or household use.

**Collateral.** You will not modify or change location of the Collateral without our proper written consent and allow us to inspect it upon our request. At your expense you will maintain the Collateral in good operation condition and repair. You will keep the Collateral free and clear from all liens and encumbrances. Titled Collateral will be titled and/or registered as we direct. You are responsible for any damage or destruction of the Collateral. You will at our election repair the Collateral at your expense or pay to us all amounts then due and owing plus the total of all unpaid Payments for the Term discounted at 3%. You will indemnify and hold us, our member, managers and employees harmless from and against any claims, costs, expenses, damages and liabilities, in any way relating to the Collateral.

**Fees and Taxes.** You agree to pay when due and to hold us harmless from all taxes, interest and penalties relating to this Agreement and the Collateral ("Taxes") and reimburse us for those Taxes we pay on your behalf.  If we pay any of the above for you, you agree to reimburse us and to pay us a processing fee for each payment we make on your behalf. In addition, you also agree to pay us any filing fees prescribed by the Uniform Commercial Code or other law and reimburse us for all costs and expenses involved in documenting and servicing this transaction. You further agree to pay us a loan fee on or before the date the first payment is due and a termination fee. You also acknowledge that in addition to the other obligations due under this Agreement, we may assess and you may be required to pay additional taxes and/or fees, including an invoice fee.  Such fees may not only cover our costs they may also include a profit.  You will indemnify us against the loss of any tax benefits arising out of your acts or omissions.

Initial: **Inits** *RP*

EFASP1296J

The original document is owned by Balboa Capital Corporation and this copy was created on Mar 28, 2025 02:10:33 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01329-FWS-JDE    Document 1-1    Filed 05/27/26    Page 4 of 7   Page ID #:10

**Insurance.** Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request..

**Noncompliance Fee**.  If Debtor fails to comply with the obligations set forth in the previous section, at Creditor's election, Creditor may assess a monthly fee of 0.50% of the Collateral Cost ("Noncompliance Fee"). This Noncompliance Fee is calculated with reference to additional risk, represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without the Required Insurance, and also constitutes additional profit for Creditor. Debtor will receive no insurance coverage by paying this Noncompliance Fee, and will not be released from any obligations. **Creditor does not sell or place insurance**. Creditor will cease charging this Noncompliance Fee thirty (30) days after Debtor provides satisfactory proof of the Required Insurance.

**Default and Remedies.** If any one of the following occurs, you will be in default: (i) you fail to pay any amount under this Agreement when due; (ii) you cease doing business, admit your inability to pay your debts, or you file or have filed against you a petition under the Bankruptcy Code; (iii) you breach any other obligation contained in this Agreement; or (iv) any of the above events of default occur with respect to any Guarantor. Upon your default, we may do any or all of the following: (a) terminate this Agreement; (b) take possession of the Collateral; you irrevocably waive any security required of us in the event we take possession of the Collateral and require you to deliver it to us at your expense to a location designated by us; (c) accelerate and declare all sums due and to become due hereunder immediately due and payable, including all future payments discounted to its present value at a discount rate of three percent (3%); (d) sell, dispose of, hold, or lease the Collateral; (e)  Creditor may sue for and recover from Debtor the sum of: (1) all unpaid Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (f) exercise any other right or remedy which may be available to us under applicable law. You shall reimburse us for all costs we incur in enforcing our rights including our attorney's fees and costs of repossession, repair, storage and remarketing of the Collateral. A waiver of default will not be a waiver of any other subsequent default.

**General.** This Agreement **will be governed and construed under the laws of the State of California** without reference to its principle of conflicts of laws and is deemed to have been made and performed in Orange County, CA. **You submit to the exclusive and mandatory jurisdiction of CA** and agree that the CA state courts and/or the United States District Court for the Central District of California, Santa Ana Division, will have exclusive and mandatory jurisdiction over any action or proceeding to enforce this Agreement or any action or proceeding arising out of this Agreement. **We may at our sole discretion commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.** You waive any objection based on improper venue and/or forum non-conveniens. You irrevocably grant us the right to make such filings under the Uniform Commercial Code as we deem necessary. You agree to pay us interest on all past due amounts at the lower of 1.5% per month or the highest rate allowed by law. You will not assign your rights under this Agreement, or permit the Collateral to be used by anyone other than you. We may assign this Agreement, in whole or in part, without notice to you or without your consent. You agree that our assignee will have the same rights and benefits that we have now, but will not be subject to any claims, defenses or set offs that you may have against us. **This Agreement constitutes the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing.  This Agreement cannot be modified except in writing signed by the party against whom enforcement is sought.  Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.**  You represent and warrant to us that all information conveyed to us in connection with this Agreement and all related documents whether by you, a guarantor, a supplier or any other person, is true, accurate, complete and not misleading. This Agreement may be executed in separate counterparts which together shall be the same instrument. You agree this Agreement may be signed electronically pursuant to the Electronic Signatures in Global and National Commerce Act and other applicable law. All fees may not only cover our costs but may include a profit. You may not repay this Agreement without our prior written consent. If Debtor constitutes more than one person, the liability of each shall be joint and several. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. Any notice given hereunder shall be in writing and deemed given two business days after being deposited with the US Postal Service, first class postage prepaid, and addressed to the Debtor at its address set for above or to Creditor at _____575 Anton Blvd, Suite 1080, Costa Mesa, CA 92626_____, or such other address given to the sender by written notice.

Initial: _____ _RP_ _____

The original document is owned by Balboa Capital Corporation and this copy was created on Mar 28, 2025 02:10:33 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**WIRELESS PARTNERS, LLC**

March 3 2025
Ameris Bank
Attn: Funding Supervisor
575 Anton Blvd, Suite 1080
Costa Mesa, CA 92626

### SUPPLIER PAYMENT DIRECTIVE

Re:     Equipment    Financing    Agreement    ("EFA")    ___535587-000___    between    Ameris    Bank    and
___WIRELESS PARTNERS, LLC_____ ("DEBTOR")

We, the undersigned, hereby acknowledge that the Equipment described in the EFA referenced above has not been delivered and/or accepted by us and that, **by this letter, we are instructing you to PREFUND the Supplier listed below.** We further recognize and understand that, as a condition precedent for you to PREFUND the Supplier prior to delivery and/or acceptance of the Equipment described in the EFA above, we must ratify and affirm the terms and conditions contained in the EFA, and the Personal Guaranty. **WE AFFIRM THAT WE HAVE READ AND FULLY UNDERSTAND** the terms and conditions contained in the EFA, and the Personal Guaranty**. Any questions we had regarding those terms were fully explained and answered by legal counsel of our choice in advance of signing the aforementioned agreements and requesting this PRE-DELIVERY DISBURSEMENT.**

By signing below, we specifically authorize and request that Ameris Bank and/or its Assignee disburse proceeds as outlined below. We agree that all or some of the Equipment has not been delivered, installed and/or accepted and that all the terms and conditions of the EFA, and Personal Guaranty remain in full force and effect and that we are unconditionally bound to re-pay all amounts advanced under the EFA.

A facsimile or electronic copy of our signature shall be sufficient for Ameris Bank reliance upon this document and the unfettered enforcement of this document, the EFA, and Personal Guaranty as an original signature.

With regard to the above-captioned **WE HEREBY IRREVOCABLY AUTHORIZE AND DIRECT YOU TO PAY ON OUR BEHALF THE FOLLOWING SUPPLIERS AND AMOUNTS**:

| SUPPLIER: | AMOUNT: | DATE: |
|---|---|---|
| WAV LLC | $ $113,456.00 | 03/24/2025 |
| | $ | |
| | $ | |
| | $ | |
| | $ | |

We recognize that Payment on our behalf to the Supplier does not obligate you to confirm the application of the Amounts thereof by the recipient(s).

We authorize Ameris Bank to amend any documents to reflect the correct descriptions and serial numbers of all items of Equipment wherever necessary.

Billing Contact: Name:_Michael Bray_____ Phone Number:_(207) 475-4282_____ Email:_mbray@wireless-partnersllc.com_

Very truly yours,
WIRELESS PARTNERS, LLC

Signature: ___*Robert J Parsloe*___ Mar 24, 2025 12:26:14 PM PDT  Date: _03/24/2025_____

Name: _Robert J Parsloe_____  Title: _CEO & President_____

Signature: ___Signature Not Required_____  Signature: ___Signature Not Required_____

Name: _____, Guarantor  Name: _____, Guarantor



1869C

The original document is owned by Balboa Capital Corporation and this copy was created on Mar 28, 2025 02:10:33 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 8:26-cv-01329-FWS-JDE    Document 1-1    Filed 05/27/26    Page 6 of 7    Page ID #:12

## Addendum "B"

To  **WIRELESS PARTNERS, LLC**

Equipment Finance Agreement No.  **535587-000**

Reference is made to the above-referenced Equipment Finance Agreement ("Agreement") dated 03/24/2025 by and between WIRELESS PARTNERS, LLC
as Debtor, and AMERIS BANK as Creditor.

Provided that no event of default now exists or has ever existed, Debtor may prepay its obligations under the Agreement in full, but not in part, in advance of the contractually scheduled end of term.

The early payoff shall be calculated as follows:

1. Payment in full of the current net investment as calculated by Creditor, plus all accrued and unpaid late charges and/or fees and/or taxes, and/or other amounts due under this Agreement ("Prepayment Amount"). Plus,

2. (x) 1% of the current net investment as of the payoff date, as an early termination fee ("Prepayment Fee"), multiplied by (y) the number of full twelve-month periods remaining.

Debtor and Creditor acknowledge and agree that the Prepayment Fee is a reasonable estimate of the actual or anticipated harm sustained by Creditor for Debtor's early payoff.  For purposes of calculating the Prepayment Amount and Prepayment Fee, any unearned interest that would accrue after the payoff date shall be excluded from the calculation of the net investment amount as of the payoff date.  Debtor will not receive any rebate or credit for interest relating to any period prior to the payoff date.

In all other respects, the terms and conditions of the Agreement, as originally set forth, shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto, by their authorized signatories, have executed this Addendum "B" as of the date set forth below their respective signatures.

Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature.

**In the event of an error or omission in the calculation of the Prepayment Amount or the Prepayment Fee, Creditor reserves the right to re-calculate the payoff and bill and collect for any difference.**

**Creditor:**
**Ameris Bank**

By: _Lisa Morgan_
Mar 28, 2025 2:10:32 PM PDT
Vice President

Date: 03/28/2025

**Debtor:**
**WIRELESS PARTNERS, LLC**

By: _Robert J Parsloe_
Mar 24, 2025 12:26:27 PM PDT
Name: Robert J Parsloe
Title: CEO & President

Date: 03/24/2025

1272D


The original document is owned by Balboa Capital Corporation and this copy was created on Mar 28, 2025 02:10:33 PM.

EXHIBIT A1



| FIRST OPTION CAPITAL | 1 Wrigley, second floor Irvine, CA 92618 949-900-6301 | **Invoice** |
|---|---|---|
| | | 3/28/2025 |

**Bill To:**   **Ship To:**

Ameris Bank    Ameris Bank

575 Anton Blvd.    575 Anton Blvd.

Costa Mesa, CA 92626    Costa Mesa, CA 92626

| | |
|---|---|
| **Invoice:** | 32425 |
| **Customer INFO** | Wireless Partners, LLC |
| **Address** | |
| | |
| | |
| **Phone** | |
| **Funding Bank** | Balboa Capital |
| **Cost of Equipment** | $113,456.00 |
| | |
| **Lease Number** | |
| | |
| **Funding Date** | |
| | |

**Due upon receipt**

| Date | | Description | Amount |
|---|---|---|---|
| Amount: | | Commission | $113,456.00 |
| Term: | 60 | | |
| | | | |
| Lease Commissions | | | $9,870.67 |
| Doc Fee Margin | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| Total Margin: | $9,870.67 | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | Subtotal | $9,870.67 |
| | | | |
| | | | $0.00 |
| | | Total | $9,870.67 |

**Thanks for letting us serve you!**